1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11   JUDY ANN SAWYER,                      No.  2:15-cv-1573-KJN

12                Plaintiff,

13         v.                             ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

21   Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that

22   the Commissioner erred by finding that plaintiff was not disabled from November 23, 2010,

23   through the date of the final administrative decision.  (ECF No. 21.)  The Commissioner filed a

24   cross-motion for summary judgment and opposition to plaintiff's motion for summary judgment.

25   (ECF No. 22.)  Plaintiff did not file a reply.

26

27   _____

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both
28   parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.
     (ECF Nos. 9, 12.)

After carefully considering the parties' written briefing, the court's record, and the applicable law, the court DENIES plaintiff's motion, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

I.    BACKGROUND

Plaintiff was born on March 30, 1960, completed high school and a medical assisting course, and is able to communicate in English.  (Administrative Transcript ("AT") 63-64.)[2]  She has worked as an electronics assembler, electronics tester, cashier, and support services assistant.  (AT 45, 298.)  Plaintiff applied for DIB and SSI on May 27, 2011, alleging that her disability began on November 23, 2010.  (AT 137-38, 263-73.)  Plaintiff alleged that she was disabled primarily due to chronic obstructive pulmonary disease, asthma, neck and back degeneration, high blood pressure, a bad hip, left shoulder problems, lack of energy, weakness, insomnia, Guillian-Barre syndrome, and depression.  (AT 40.)  After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on August 23, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 54-108.)  The ALJ issued a decision dated January 14, 2014, determining that plaintiff had not been under a disability, as defined in the Act, from November 23, 2010, through the date of that decision.  (AT 30-46.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 21, 2015.  (AT 1-6.)  Plaintiff then filed this action in federal district court on July 22, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.    ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ erred in weighing the medical opinion evidence in the record; (2) whether the ALJ erred by finding plaintiff's mental impairments not severe at step two of the sequential analysis; (3) whether the ALJ erred in discounting certain aspects of plaintiff's testimony; and (4) whether the ALJ committed

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1 prejudicial error in failing to weigh the third party lay witness statement provided by plaintiff's

2 friend.

3 III.    LEGAL STANDARD

4        The court reviews the Commissioner's decision to determine whether (1) it is based on

5 proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

6 as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

7 evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

8 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

9 mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

10 Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

11 responsible for determining credibility, resolving conflicts in medical testimony, and resolving

12 ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

13 court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

14 interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

15 IV.    DISCUSSION

16        A.    Summary of the ALJ's Findings

17        The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's

18 standard five-step analytical framework.[3]  As an initial matter, the ALJ found that plaintiff

19 ─────────────────

20 [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled

21 persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable

22 physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20

23 C.F.R. §§ 404.1520,  404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

24

25        Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

26        Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step

27 three.  If not, then a finding of not disabled is appropriate.

28        Step three: Does the claimant's impairment or combination of impairments meet or

3

remained insured for purposes of DIB through March 31, 2013.  (AT 32.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since November 23, 2010, the alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff had the following severe impairments:  "chronic low back pain, multilevel cervical degenerative changes, lumbar scoliosis with multilevel degenerative disc disease (DDD), asthma, chronic obstructive pulmonary disease (COPD), and status post left shoulder surgeries."  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 34.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing ladders/ropes/scaffolds or crawling, occasionally reach above the shoulder on the left, avoid concentrated exposure to pulmonary irritants, and frequently grasp and perform fine manipulation.

(Id.)

////

////

---

equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

1    At step four, the ALJ found, based on the VE's testimony, that plaintiff was capable of

2    performing her past relevant work as an electronics assembler, electronics tester, and cashier.

3    (AT 45.)  Accordingly, the ALJ concluded his analysis at step four and did not continue on to step

4    five to assess whether there were jobs that existed in significant numbers in the national economy

5    that plaintiff could perform.  Thus, the ALJ concluded that plaintiff had not been under a

6    disability, as defined in the Act, from November 23, 2010, through the date of the ALJ's decision.

7    (AT 46.)

8    B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

9         1.    *Whether the ALJ Erred in Weighing the Medical Opinion Evidence in the*

10            *Record*

11   First, plaintiff argues that the ALJ erred in considering and weighing the medical opinion

12   evidence in the record when he determined plaintiff's RFC.  Specifically, plaintiff contends that

13   the ALJ improperly considered and weighed the medical opinions of Dr. Burt, Dr. McCrory, Dr.

14   Tomlinson, Dr. Fernando, and Dr. Brimmer.

15   The weight given to medical opinions depends in part on whether they are proffered by

16   treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

17   1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking,

18   a treating physician's opinion carries more weight than an examining physician's opinion, and an

19   examining physician's opinion carries more weight than a non-examining physician's opinion.

20   Holohan, 246 F.3d at 1202.

21   To evaluate whether an ALJ properly rejected a medical opinion, in addition to

22   considering its source, the court considers whether (1) contradictory opinions are in the record;

23   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

24   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

25   F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

26   rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion

27   generally is accorded superior weight, if it is contradicted by a supported examining

28   professional's opinion (supported by different independent clinical findings), the ALJ may

1  resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes

2  v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the

3  contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any

4  event need not give it any weight if it is conclusory and supported by minimal clinical findings.

5  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally

6  supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-

7  examining professional, by itself, is insufficient to reject the opinion of a treating or examining

8  professional.  Lester, 81 F.3d at 831.

9                              a.   Dr. Burt and Dr. McCrory

10       Plaintiff contends that the ALJ erred by assigning "minimal weight" to the treating

11  physician opinions of Dr. Burt and Dr. McCrory.

12       Dr. Burt examined plaintiff on August 1, 2013, and issued an opinion on plaintiff's

13  physical functional limitations.  (AT 1378-94.)  In his examination notes, Dr. Burt diagnosed

14  plaintiff with chronic, recurrent dislocations of her left shoulder, chronic discogenic neck pain,

15  and radiculopathy at the C5-6 level of her spine.  (AT 1392.)  Based on these impairments, Dr.

16  Burt opined that plaintiff could walk between 1 and 2 hours, stand for less than 1 hour, and sit

17  between 1 and 2 hours in an 8-hour workday.  (Id.)  He opined further that plaintiff could

18  frequently lift less than 5 pounds, occasionally lift between 5 and 10 pounds, and never lift more

19  than 10 pounds.  (AT 1393.)  Dr. Burt also opined that plaintiff was restricted in climbing stairs or

20  ladders and bending, and required periodic rest during the day.  (Id.)  Ultimately, Dr. Burt opined

21  that plaintiff was not capable of performing the full range of sedentary work and would not

22  improve in her condition.  (AT 1393-94.)

23       Dr. McCrory examined plaintiff on April 2, 2012, and issued an opinion regarding the

24  functional impact of plaintiff's physical impairments.  (AT 1292-307.)  Dr. McCrory opined that

25  plaintiff could only stand and/or walk approximately 20 minutes at a time without experiencing

26

27  [4] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3)
    nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;
28  (6) specialization.  20 C.F.R. §§ 404.1527, 416.927.

significant back pain.  (AT 1298.)  He opined further that plaintiff was precluded from engaging

in repetitive motion of her spine and neck.  (Id.)  He also determined that plaintiff could sit for

only up to 1 hour at a time, was able to maintain semi-sedentary work activities for only up to 2

hours each day, and would need rest breaks approximately every hour.  (Id.)  Dr. McCrory also

opined that plaintiff's ability to push and pull was markedly restricted and that plaintiff could lift

up to 10 pounds occasionally, but only without the use of her left upper extremity.  (AT 1298-99.)

Dr. McCrory opined further that plaintiff could use both upper extremities for fine hand

movements and general activities, but could only do so for approximately up to 1 hour at a time.

(AT 1298.)  He also opined that plaintiff was precluded from performing activities above the

shoulder with her left upper extremity.  (AT 1299.)  Finally, Dr. McCrory opined that plaintiff

could not stoop, crawl, work on her hands and knees, or engage in activities at unprotected

heights or on ladders.  (Id.)

The ALJ provided the following rationale for giving Dr. Burt's and Dr. McCrory's

opinions "minimal weight":

> The medical opinions by Dr. Burt and Dr. McCroy [*sic*], were given minimal weight as the clinical findings they documented upon examination were not all documented when the claimant underwent her internal CEs, or by her treating sources/physicians, including Dr. Tomlinson.  The opinions were also not given greater weight as they were inconsistent with the SA determinations, medical opinions of Dr. Brimmer, Board Certified, in her internal medicine CE, and the claimant's daily activities as described in the record and the hearings that show she is far more functional than they indicated.  Additionally, there was no EMG/NCS testing to confirm she has carpal tunnel syndrome and treating records contained few clinical findings related to such a diagnosis.  Additionally, upon examination Dr. McCroy [*sic*] noted that she ambulated well and they did not refer her to a pain clinic for management of her pain or a surgeon to determine if surgery was necessary.

(AT 45.)  These were specific and legitimate reasons for discounting these physicians' opinions

that were supported by substantial evidence in the record.

////

////

1      First, the ALJ properly determined that Dr. Burt's and Dr. McCrory's clinical findings and

2   overall opinions conflicted with the findings and opinions of plaintiff's other treating physicians

3   and the medical record more generally.  Indeed, many of plaintiff's treatment and examination

4   records show largely normal physical test results and indicate only some mild-to-moderate

5   degenerative changes in her spine and left shoulder.  (E.g., AT 1132, 1151-54, 1162-63, 1167,

6   1175, 1181, 1263-64, 1272, 1287, 1289-91, 1353, 1411, 1438, 1440, 1443-44,  ).  Such objective

7   medical evidence reasonably suggested that the limitations stemming from plaintiff's physical

8   impairments were less severe than those opined by Dr. Burt and Dr. McCrory.  While plaintiff's

9   medical records also at times suggested that plaintiff's physical impairments were more severe

10  than the above evidence indicated, the ALJ engaged in a detailed evaluation of all of the medical

11  evidence and reached the reasonable conclusion that, overall, the objective medical findings did

12  not support the degree of limitation opined by Dr. Burt and Dr. McCrory.  See Molina v. Astrue,

13  674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one

14  rational interpretation, we must uphold the ALJ's findings if they are supported by inferences

15  reasonably drawn from the record.").

16     Moreover, the opinions of multiple other examining and non-examining physicians

17  contained limitations less severe than the less-than-sedentary findings contained within Dr. Burt's

18  and Dr. McCrory' s opinions.  For example, both Dr. Fernando and Dr. Brimmer conducted

19  independent physical examinations of plaintiff and determined that plaintiff had the capacity to

20  perform light work with some additional exertional limitations.  (AT 1079-86, 1150-54.)   In

21  addition to the objective medical findings obtained through Dr. Fernando's and Dr. Brimmer's

22  examinations of plaintiff, the treating records discussed above were generally consistent with the

23  more mild limitations opined by those two physicians.  Furthermore, non-examining physicians

24  Dr. Pan and Dr. Dipsia similarly opined that plaintiff had the capacity to perform light work with

25  a few additional physical limitations, and ultimately found plaintiff not disabled.  (AT 109-36,

26  139-72.)  Accordingly, the conflict between the opinions of Dr. Burt and Dr. McCrory and the

27  opinions of the consultative examining and non-examining physicians constituted substantial

28  evidence in support of the ALJ's determination to assign reduced weight to Dr. Burt's and Dr.

McCrory's opinions.  See Andrews, 53 F.3d at 1041 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing Magallanes, 881 F.2d at 752) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Plaintiff argues that the ALJ was not permitted to discount the opinions of Dr. Burt and Dr. McCrory on the basis that they conflicted with the findings and opinions of the other physicians in the record because Dr. Burt and Dr. McCrory were specialists with regard to plaintiff's physical impairments and, thus, were entitled to greater weight than the other physicians who were not specialists.  While plaintiff is correct that the regulations generally permit an ALJ to accord greater weight to a physician's opinion over the opinion of another physician when first physician is a specialist regarding the medical issues on which he or she is opining, they do not bar the ALJ from assigning greater weight to a non-specialist's opinion over that of a specialist when those opinions conflict.  See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5); Andrews, 53 F.3d at 1041.  The fact that Dr. Burt and Dr. McCrory were specialists was certainly a factor for the ALJ to consider when weighing the medical evidence, but it did not preclude the ALJ from properly finding other opinion evidence more persuasive.  Because the ALJ properly determined that the other opinion evidence in the record was better supported by the record, he did not err by assigning lesser weight to the opinions of the two specialists.

In addition, the ALJ reasonably determined that Dr. Burt's and Dr. McCrory's opinions were inconsistent with plaintiff's reported daily activities, which included driving a car, grocery shopping, doing laundry, washing dishes, putting on jewelry and makeup, and occasionally preparing food and vacuuming.  (AT 78-82, 87-88.)  Notably, plaintiff's reported daily activities indicate that she often needed to use her upper extremities and hands, which conflicted with the

1   extreme limitations Dr. Burt and Dr. McCrory opined with regard to her use of those parts of her

2   body.  Furthermore, the activities suggest that plaintiff's physical impairments did not render

3   plaintiff capable of performing only less-than-sedentary work as both physicians had opined.  In

4   short, the ALJ properly discussed the conflict between plaintiff's reported daily activities and the

5   physical limitations opined by Dr. Burt and Dr. McCrory as an additional reason for giving

6   reduced weight to those physicians' opinions.  Hensley v. Colvin, 600 F. App'x 526, 527 (9th Cir.

7   2015) (finding that ALJ provided a "specific and legitimate" reason for discounting a physicians'

8   opinion in determining that the physician's opinion conflicted with the claimant's report of her

9   daily activities); see also Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (noting that a

10  claimant's ability to perform certain daily activities, such as caring for personal needs, preparing

11  easy meals, doing light housework, and grocery shopping, "may be seen as inconsistent with the

12  presence of a condition which would preclude all work activity").

13      In sum, the ALJ provided multiple specific and legitimate reasons for discounting the

14  opinions of Dr. Burt and Dr. McCrory that were supported by substantial evidence from the

15  record.[5]  Therefore, the ALJ did not err in considering those physicians' opinions.

16                              b.  Dr. Tomlinson

17      As with Dr. Burt and Dr. McCrory, plaintiff also argues that the ALJ erred in assigning

18  "minimal weight" to the treating opinion of Dr. Tomlinson.

19      Dr. Tomlinson, plaintiff's primary treating physician, filled out a pre-printed physical

20  RFC form on June 23, 2013.  (AT 1374-76.)  Therein, Dr. Tomlinson diagnosed plaintiff with a

21  brachial plexus injury and scoliosis, with an onset date of November 29, 2010.  (AT 1374.)

22  Based on this diagnosis, Dr. Tomlinson opined that plaintiff could walk between 1 and 2 hours,

23  stand for less than 1 hour, and sit between 2 and 4 hours during the course of an 8-hour workday.

24  (Id.)  She further opined that plaintiff's diagnosed impairments caused plaintiff to suffer from

25  decreased strength in her left arm, and that plaintiff could only occasionally lift less than 5

26

27  [5] While the ALJ also provided other reasons for discounting the opinions of Dr. Burt and Dr.
    McCrory, the court finds that the reasons discussed above are sufficient to uphold the ALJ's
28  decision.  Therefore, the court declines to consider the ALJ's additional reasons.

1    pounds.  (AT 1374-75.)  Dr. Tomlinson also opined that plaintiff was partially restricted from

2    climbing stairs or ladders and suffered from incapacitating pain.  (AT 1375.)  Ultimately, Dr.

3    Tomlinson opined that plaintiff could perform less than the full range of sedentary work, was

4    unable to complete an 8-hour workday 5 days per week, and would not experience improvement

5    in her condition.  (AT 1375-76.)

6         The ALJ provided the following rationale for giving Tomlinson's opinion "minimal

7    weight":

> [H]is [*sic*] progress/chart notes did not contain clinical findings to
> support the limitations identified and he [*sic*] did not refer the
> claimant to specialists for treatment, to a pain clinic for
> management of her pain, and did not have her hospitalized.  The
> neurological portion of his [*sic*] examinations revealed the
> claimant's sensory was normal, and his [*sic*] opinions were further
> given minimal weight, as they were inconsistent with the SA
> determinations, the CE medical opinions, and the claimant's daily
> activities as described at the hearing and in the Function Reports of
> record.  Moreover, she indicated in her Title XVI application she
> did not need help with personal care, hygiene or upkeep of a home,
> and in her Disability Report-Adult filed in June 2011, she indicated
> she stopped work because of being laid off, not because of any of
> her impairments or complaints.

17   (AT 44.)  As discussed below, this reasoning was proper and supported by substantial evidence.

18        First, the ALJ properly determined that the functional limitations Dr. Tomlinson opined

19   were not supported the clinical findings contained in her own treating notes and charts.  Dr.

20   Tomlinson's treatment notes in the record generally showed normal physical exam results and x-

21   ray results showing only mild degenerative changes.  (E.g., AT 1458, 1463, 1468, 1474-75, 1480,

22   1484-87, 1490-93, 1502, 1504, 1541, 1543, 1549, 1551.)  Such objective findings did not support

23   the extreme physical limitations contained in Dr. Tomlinson's opinion and the ALJ properly cited

24   to those findings in support of his determination that Dr. Tomlinson's opinion was entitled to only

25   "minimal weight."  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that

26   incongruities between a treating physician's objective medical findings and that physician's

27   opinion constitute specific and legitimate reasons for the ALJ to reject that physician's opinion

28   concerning the claimant's functional limitations); Batson v. Comm'r of Soc. Sec. Admin., 359

F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . , or by objective medical findings."); Rollins, 261 F.3d at 856 (holding that the ALJ properly discounted a treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings).

Furthermore, as he reasoned with regard to Dr. Burt's and Dr. McCrory's opinions, the ALJ also properly determined that Dr. Tomlinson's opinion was undermined by the other medical opinion evidence in the record.  Dr. Fernando, Dr. Brimmer, Dr. Pan, and Dr. Dipsia all opined physical limitations that were less severe than those opined by Dr. Tomlinson and that more closely reflected the objective medical findings in the record, including Dr. Tomlinson's own treating notes.  Accordingly, the ALJ did not err in determining that these other physicians' opinions undermined Dr. Tomlinson's opinion that plaintiff's physical limitations rendered her capable of performing many workplace functions at a less-than-sedentary capacity.  See Andrews, 53 F.3d at 1041; Tonapetyan, 242 F.3d at 1149.

Also similar to his determination with regard to Dr. Burt's and Dr. McCrory's opinions, the ALJ reasonably found that plaintiff's reported daily activities conflicted with the extreme physical limitations opined by Dr. Tomlinson.  As discussed above with regard to Dr. Burt's and Dr. McCrory's opinions, plaintiff's reported daily activities suggested that plaintiff did not have physical limitations that rendered her fully disabled within the meaning of the Act.  Those activities conflicted with Dr. Tomlinson's opinion that plaintiff had the RFC to perform only less-than-sedentary work and provided substantial evidence in support of the ALJ's determination that Dr. Tomlinson's opinion was too restrictive.  See Hensley, 600 F. App'x at 527.  Accordingly, the ALJ did not err in relying on this reasoning to support his determination that Dr. Tomlinson's opinion was entitled to reduced weight.

The ALJ provided multiple specific and legitimate reasons for discounting Dr. Tomlinson's opinion and, therefore, did not err in considering her opinion.

////

////

c.   Dr. Fernando and Dr. Brimmer

Plaintiff contends further that while the ALJ assigned "significant weight" to the opinions of examining physicians Dr. Fernando and Dr. Brimmer, the ALJ erroneously omitted or failed to incorporate certain limitations opined by these physicians into his RFC determination.  With regard to Dr. Fernando, plaintiff argues that the ALJ erred by rejecting Dr. Fernando's diagnosis of fibromyalgia and the standing and walking limitations he opined without providing proper reasons for doing so.  With respect to Dr. Brimmer, plaintiff asserts that the ALJ erred by not incorporating Dr. Brimmer's opinion that plaintiff could not engage in any overhead lifting and only occasional manipulative activities with her left arm.  Plaintiff's arguments with regard to Dr. Fernando and Dr. Brimmer are without merit.

With regard to Dr. Fernando, while the ALJ found her opinion largely persuasive, the ALJ rejected certain aspects of the opinion based on the following rationale:

> The undersigned rejected the walking/standing limitation identified by Dr. Fernando in her CE as the SA rejected it, and the subsequent CE by Dr. Brimmer did not indicate the claimant was limited in her ability to walk/stand.  No limitations concerning the claimant's ability to walk/stand was observed during the mental CEs, and treating records did not contain clinical or diagnostic findings to support she was limited in her ability to walk/stand.  The diagnosis of fibromyalgia was further rejected as the CE by Dr. Brimmer did not find upon examination any fibromyalgia tender points, and the doctor did not diagnose fibromyalgia.  Treating records did not contain an assessment, impression or diagnosis of fibromyalgia based upon their examinations of the claimant.  While Dr. Drake listed fibromyalgia as an Axis II diagnosis, his area of expertise is in the mental health field, not musculoskeletal, and he did not perform any physical examination to support the diagnosis.  As a result, the diagnosis was rejected by the undersigned as well.  Lastly, the SA did not identify the diagnosis as a severe impairment.

(AT 44.)

Plaintiff argues that the ALJ's rejection of the walking/standing limitations Dr. Fernando opined was erroneous because the opinions of Dr. Burt and Dr. McCrory corroborated those limitations.  However, the ALJ properly assigned reduced weight to the opinions of Dr. Burt and Dr. McCrory for the reasons discussed above.  Moreover, as the ALJ discussed in his decision,

1   Dr. Brimmer, Dr. Dipsia, and Dr. Pan all opined that plaintiff could walk/stand up to 6 hours in an

2   8-hour workday, which conflicted with Dr. Fernando's opinion that plaintiff could walk/stand for

3   only up to 4 hours in an 8-hour workday.  (AT 44, 118, 152, 1154.)  These three opinions

4   constituted substantial evidence to support the ALJ's decision to discount the walk/stand

5   limitation Dr. Fernando opined.  See Andrews, 53 F.3d at 1041; Tonapetyan, 242 F.3d at 1149.

6   Furthermore, the ALJ also properly determined that plaintiff's treating records did not contain

7   clinical or diagnostic findings indicating that plaintiff was limited in her ability to walk/stand to

8   the degree Dr. Fernando opined.  In short, there was substantial evidence to support the ALJ's

9   well-reasoned decision to discount Dr. Fernando's opined walk/stand limitation.  Therefore,

10   plaintiff's argument is without merit.

11   Plaintiff's argument is also not well taken with regard to the ALJ's rejection of Dr.

12   Fernando's diagnosis of fibromyalgia.  Dr. Fernando based her opinion regarding plaintiff's

13   specific functional limitations on his examination findings, including her fibromyalgia diagnosis,

14   and a review of plaintiff's available medical records.  (AT 1079-85.)  The ALJ adopted the

15   majority of the functional limitations contained in Dr. Fernando's opinion and properly provided

16   specific and legitimate reasons for rejecting the walking/standing limitation she opined.

17   Therefore, even had the ALJ accepted Dr. Fernando's diagnosis of fibromyalgia as true, it would

18   not have impacted the specific functional limitations the ALJ incorporated into his RFC

19   determination.  Accordingly, even assuming, without deciding, that the ALJ failed to provide

20   proper reasons for rejecting Dr. Fernando's fibromyalgia diagnosis, that error would be harmless.

21   With regard to Dr. Brimmer, plaintiff argues that the ALJ erred when he did not

22   incorporate into his RFC determination Dr. Brimmer's opinion that plaintiff could not engage in

23   any overhead reaching and only occasional manipulative activities with her left arm and instead

24   found that plaintiff could "occasionally reach above the shoulder on the left" and "frequently

25   grasp and perform fine manipulation."  Plaintiff contends that by assigning "significant weight"

26   to Dr. Brimmer's opinion, but not adopting his opined limitations regarding plaintiff's left arm,

27   the ALJ impliedly rejected that aspect of Dr. Brimmer's opinion without providing specific and

28   legitimate reasons for doing so.

14

1    The ALJ was not required to adopt all of the limitations Dr. Brimmer opined solely

2  because he gave that opinion "great weight" and generally found it persuasive as a whole.  See 20

3  C.F.R. §§ 404.1527(e)(2); 416.927(e)(2) ("Administrative law judges are responsible for

4  reviewing the evidence and making findings of fact and conclusions of law . . . [and] are not

5  bound by any findings made by State agency medical or psychological consultants."); Wilkinson

6  v. Comm'r Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) (unpublished) ("[N]o rule or

7  regulation compels an ALJ to incorporate into an RFC every finding made by a medical source

8  simply because the ALJ gives the source's opinion as a whole 'significant' weight.  On the

9  contrary, the controlling regulations are clear that the RFC finding is a determination expressly

10  reserved to the Commissioner."); Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) ("The

11  determination of a claimant's RFC and the application of vocational factors are reserved to the

12  ALJ, who is not bound by medical opinion on these subjects.").  While the ALJ assigned

13  "significant weight" to Dr. Brimmer's opinion and largely adopted many of the limitations that

14  physician opined into his overall RFC determination, he also assigned equal weight to the

15  opinions of other physicians, including Dr. Fernando, who opined that plaintiff was capable of

16  reaching and grasping occasionally with her left arm, and had no limitations with regard to the

17  use of her right arm.  (AT 1085.)  In light of this other medical opinion evidence that the ALJ

18  held in equal regard to Dr. Brimmer's opinion, it was reasonable for the ALJ to conclude that

19  plaintiff was capable of occasional overhead reaching with her left arm.

20    Similarly, it was appropriate for the ALJ to reach the conclusion that plaintiff could

21  frequently engage in grasping and fine manipulation activities.  While both Dr. Brimmer and Dr.

22  Fernando opined that plaintiff was limited to only occasional grasping with her left upper

23  extremity, they also both found that plaintiff was unrestricted in the use of her right upper

24  extremity.  (AT 1085, 1154.)  The ALJ incorporated these opinions into his RFC determination

25  by finding that, overall, plaintiff was able to frequently grasp and perform fine manipulation.

26  (AT 34.)  Such a synthesis of the physicians' opinions was proper.  See, e.g., Landrum v. Colvin,

27  2013 WL 3819675, at *6 (C.D. Cal. Jul. 23, 2013) (collecting cases) (noting that the Dictionary

28  of Occupational Titles does not require the use of both arms and hands for jobs involving

1  reaching, handling, and fingering); Gutierrez v. Astrue, 2012 WL 234366, at *2 (C.D. Cal. Jan

2  24, 2012) ("[G]enerally speaking, the requirement that an employee frequently use his hands to

3  perform a job does not mean that he has to be able to use both hands.").

4        The ALJ's RFC determination that plaintiff could occasionally reach above her shoulder

5  on the left and frequently engage in grasping and fine manipulation activities was a reasonable

6  synthesis of the opinion evidence in the record to which he assigned significant weight and was

7  supported by substantial evidence.  Therefore, the ALJ did not err in considering the left upper

8  extremity limitations opined by Dr. Brimmer.

9                2.  *Whether the ALJ Erred by Finding Plaintiff's Mental Impairments not*

10                     *Severe at Step Two of the Sequential Analysis*

11        Second, plaintiff argues that the ALJ erred by finding that plaintiff's mental impairments

12  were not "severe" at step two of the sequential analysis.

13        Under the Commissioner's regulations, an impairment or combination of impairments is

14  deemed to be severe at step two if it "significantly limits your physical or mental ability to do

15  basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  As the Ninth Circuit Court of

16  Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of

17  groundless claims.  An impairment or combination of impairments can be found not severe only

18  if the evidence establishes a slight abnormality that has no more than a minimal effect on an

19  individual's ability to work."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal

20  citations and quotation marks omitted).

21        Here, the ALJ addressed plaintiff's medically determinable mental impairments,

22  particularly bipolar disorder and major depression, and determined that they did "not cause more

23  than minimal limitation in [plaintiff's] ability to perform basic mental work activities."  (AT 33.)

24  In reaching this determination, the ALJ addressed the four functional areas set out in the

25  regulations for evaluating mental disorders.  (Id.)  First, the ALJ considered the impact plaintiff's

26  mental impairments had on her ability to carry out daily activities and found that they caused no

27  limitations in that area.  (Id.)  As the ALJ noted, plaintiff's own statements regarding her daily

28  activities contained in her function report indicate that they were not impacted even minimally by

1    plaintiff's mental impairments.  (See AT 329-36.)  Second, the ALJ considered the impact

2    plaintiff's mental impairments had on the area of social functioning and found that they caused

3    only mild limitation.  (AT 33.)  This determination was substantially supported by plaintiff's own

4    function report, in which she stated that she socialized daily on the phone and regularly attended

5    social groups, and plaintiff's treating records, which indicated largely normal social interactions

6    between her and her physicians and other medical staff.  (E.g., AT 333, 423, 1075, 1157-60,

7    1599.)  Third, the ALJ addressed the impact plaintiff's mental impairments had on the area of

8    concentration, persistence, and pace, and found that plaintiff had no limitations in that area.  (AT

9    33.)  As the ALJ noted, the examining and non-examining physicians' opinions and the treatment

10   records regarding plaintiff's mental impairments did not indicate impairment in this area of

11   functioning stemming specifically from plaintiff's mental impairments.  (E.g., AT 1157-60, 1600-

12   01.)  Finally, the ALJ also considered whether plaintiff had experienced any episodes of

13   decompensation of extended duration and found that plaintiff had not experienced any such

14   episodes.  (AT 33.)  A review of the record supports the ALJ's finding.

15          In short, the ALJ's finding that plaintiff's mental impairments were not "severe" for

16   purposes of step two were supported by the substantial evidence discussed above.  Accordingly,

17   the ALJ did not err by not including those impairments among those he found to be severe at step

18   two.

19          Plaintiff argues the fact that the record contains Global Assessment of Functioning

20   ("GAF") scores ranging between 41 and 60, which indicate moderate-to-severe mental

21   impairment, demonstrate that plaintiff's mental impairments did cause more than a minimal

22   limitation in plaintiff's ability to perform mental work activities, therefore requiring the ALJ to

23   find those impairments "severe" at step two.  Even though plaintiff makes much of plaintiff's

24   GAF scores, such scores are not dispositive in social security cases.  Trinchere v. Astrue, 2008

25   WL 4395283, at *6 (C.D. Cal. Sept. 3, 2008).  A low GAF score does not alone determine

26   disability, but is a piece of evidence to be considered with the rest of the record.  Olds v. Astrue,

27   2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (citation omitted).  An ALJ is permitted to

28   discredit a GAF score where it is unsupported by objective evidence.  Clark v. Astrue, 2009 WL

542166, at *6 (C.D. Cal. Mar. 4, 2009). Here, the ALJ carefully considered all of plaintiff's medical records, including any GAF scores, when determining which of plaintiff's medically determinable impairments were "severe" at step two. (AT 32-34.) As discussed above, there existed other substantial evidence in the record to support the ALJ's determination that plaintiff's mental impairments were of such a severity that they did not have more than a minimal impact on plaintiff's ability to engage in basic mental workplace functions.

Moreover, even assuming *arguendo* that the ALJ technically erred by not finding a severe mental impairment at step two, such error is harmless if the ALJ proceeded to consider the effects of plaintiff's mental impairments at subsequent steps. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ determined that plaintiff did have medically determinable mental impairments, albeit ones that were not "severe," and made his RFC determination after taking into account all of plaintiff's mentally determinable impairments, both physical and mental. (AT 33-45.) Because the ALJ took into account plaintiff's medically determinable mental impairments when determining plaintiff's RFC, any error by the ALJ in not including those impairments in the list of "severe" impairments at step two the error would have been harmless.[6] Accordingly, the court finds plaintiff's argument with regard to the ALJ's step two determination to lack merit.

3.      *Whether the ALJ Erred in Discounting Plaintiff's Pain and Symptom*
        *Testimony*

Third, plaintiff argues that the ALJ erred in finding plaintiff's testimony less than fully credible because the ALJ's reasons for discounting that testimony were not clear and convincing reasons supported by substantial evidence.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

---

[6] Furthermore, because the ALJ properly determined that plaintiff's medically determinable mental impairments were mild, he was not required to include non-exertional limitations beyond the limitations contained in his RFC determination. See Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (holding that mild or moderate depression is not sufficiently severe to require an ALJ to include additional non-exertional limitations in his RFC determination)

1

2

3

4

5

6

7
> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

8

9
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

10   Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

11   ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

12   be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

13   "The ALJ must specifically identify what testimony is credible and what testimony

14   undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

15   693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

16   1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

17   "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

18   between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

19   testimony from physicians and third parties concerning the nature, severity, and effect of the

20   symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

21   2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

22   1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

23   court "may not engage in second-guessing."  Id. at 959.

24   Here, the ALJ found plaintiff's testimony regarding the extent of the pain and limitations

25   stemming from her mental and physical impairments was less than fully credible.  More

26   specifically, the ALJ found plaintiff's mental complaints "not credible," complaints related to her

27   spine and upper left extremity "partially credible," and her pulmonary complaints "slightly

28   credible."  (AT 41, 44.)  To the extent that the ALJ discounted plaintiff's testimony regarding her

symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

First, the ALJ determined that plaintiff's relatively conservative treatment with regard to certain impairments undermined her testimony regarding the extent of her pain and the limitations stemming from those impairments. For instance, the ALJ highlighted the fact that plaintiff had not received chiropractic care for her spinal issues, acupuncture, or hand therapy to address her upper extremity issues, and had not been hospitalized for management of her alleged pain or pulmonary impairments. (AT 43.) The ALJ also noted that the record contained only limited evidence that plaintiff underwent breathing treatments to address her COPD and other breathing impairments. (Id.) Similarly, there was minimal evidence of treatment for plaintiff's alleged irritable bowel syndrome. (AT 42 (citing AT 404-1073, 1117-41, 1161-85, 1258-1334, 1347-1422). The ALJ properly considered this evidence of plaintiff's relatively conservative treatment for these impairments to support of his adverse credibility determination. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ also discounted plaintiff's complaints of disabling pain and limitations because they were undermined by plaintiff's statements regarding her daily activities. (AT 41-42.) "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of

1    her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th

2    Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in

3    the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit

4    the claimant's credibility).

5         As noted above with respect to the ALJ's consideration of the opinions of Dr. Burt, Dr.

6    McCrory, and Dr. Tomlinson, it was reasonable for the ALJ to determine that plaintiff's reported

7    daily living activities indicated that plaintiff was not limited by her impairments to the disabling

8    degree that she alleged.  For instance, plaintiff testified that she engaged in daily activities often

9    requiring her to use her hands and upper extremities, such as putting on jewelry and makeup,

10   buttoning clothes, using her hands to open containers, grasping the steering wheel when driving,

11   and grasping a shopping cart when at the grocery store, which undermined her complaints that

12   she had no function in her left shoulder and limitations on the use of her hands.  Plaintiff also

13   noted in her Title XVI application that she did not need any assistance with personal care,

14   hygiene, or upkeep of her home, which the ALJ reasonably cited to in support of his

15   determination that plaintiff's reported daily activities belied plaintiff's claims of disabling

16   limitations and pain.  (AT 42, 268.)  The ALJ also cited to other examples of  plaintiff's reported

17   daily activities throughout his discussion of plaintiff's RFC that reasonably called into question

18   plaintiff's claims of disabling limitations and pain.  (See AT 41-42.)

19        Finally, the ALJ also discounted plaintiff's subjective complaints to the extent that he did

20   based on the fact that the objective medical evidence in the record suggested that plaintiff's

21   impairments were not as limiting as she alleged.  Although lack of medical evidence cannot form

22   the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a

23   relevant factor for the ALJ to consider.  Burch, 400 F.3d at 681.  Here, the ALJ noted that the

24   degree of severity plaintiff alleged conflicted with the less severe medical findings of plaintiff's

25   physicians, including the findings and medical opinions provided by Dr. Fernando and Dr.

26   Brimmer.  (AT 41.)  The ALJ also noted that the medical observations contained in the notes of

27   Dr. Burt, Dr. McCrory, Dr. Tomlinson, and other treating and examining sources undermined the

28   aspects of plaintiff's testimony that the ALJ highlighted in his decision.  (AT 41-42.)  This

constituted substantial evidence in support of the ALJ's proper reasoning that the objective medical evidence in the record further undermined plaintiff's credibility.

In sum, the ALJ provided multiple clear and convincing reasons for discounting plaintiff's testimony in the manner that he did that were supported by substantial evidence in the record. Therefore, plaintiff's argument that the ALJ's adverse credibility determination was made in error is without merit.

>    4.    *Whether the ALJ Committed Prejudicial Error in Failing to Weigh the Third Party Lay Witness Statement*

Finally, plaintiff argues that the ALJ improperly discounted the lay witness testimony of plaintiff's boyfriend, Gayle Sinkey, without providing germane reasons for doing so that were specific to that witness.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.  Nevertheless, the ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis." Molina, 674 F.3d at 1114. Indeed, while the applicable regulations require "the ALJ to consider testimony from family and friends submitted on behalf of the claimant," they "do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." Id. (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)).  "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 at 1114.

When the ALJ provides clear and convincing reasons for discounting a claimant's testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for

rejecting the third-party lay witness's testimony.  <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009); <u>see also</u> <u>Molina</u>, 674 at 1114.  Furthermore, even when the ALJ errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is harmless if that layperson's testimony largely reflects the limitations described by the claimant and the ALJ provides clear and convincing reasons for discounting the claimant's testimony, because the layperson's testimony in such a circumstance is "inconsequential to the ultimate nondisability determination in the context of the record as a whole."  <u>Molina</u>, 674 F.3d at 1122 (quotation marks omitted).

Here, the ALJ stated that he rendered his RFC determination "[a]fter careful consideration of the entire record" and noted that Sinkey's third-party statement was included in the evidence he reviewed, thus indicating that the ALJ considered that statement when making his decision. (AT 34, 49.)  Moreover, Sinkey's report essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to Sinkey's third-party testimony.  As such, any error in not explicitly restating or incorporating by reference the reasons given for discounting plaintiff's testimony with respect to Sinkey's third-party statement was harmless and remand is not warranted.  <u>See</u> <u>Molina</u>, 674 F.3d at 1115-22.

V.    <u>CONCLUSION</u>

In sum, the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 21) is DENIED.

2.  The Commissioner's cross-motion for summary judgment (ECF No. 22) is GRANTED.

3.  The Commissioner's final decision is AFFIRMED, and judgment is entered for the Commissioner.

////

////

////

4.  The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  September 27, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE